**STATE of Minnesota, Appellant,**

v.

**Lee J. KOCHENDORFER, Respondent.**

**No. 81–215.**

Supreme Court of Minnesota.

April 7, 1981.

Warren Spannaus, Atty. Gen., St. Paul, Tom Foley, County Atty., and Steven C. Decoster, Asst. County Atty., St. Paul, for appellant.

Kurzman, Shapiro & Manahan, Marc G. Kurzman and Lisa A. Berg, Minneapolis, for respondent.

SHERAN, Chief Justice.

This is a pretrial appeal by the state, pursuant to Minn.R.Crim.P. 29.03, from an order of the district court suppressing evidence in a multiple-count prosecution of defendant for possession of resinous and nonresinous marijuana with intent to sell or distribute. The evidence suppressed was evidence seized in a warranted search of defendant's residence, including the marijuana, a triple-beam scale, marijuana paraphernalia, a gun, and identification papers. The district court granted the motion to suppress on the ground that the affidavit in support of the search warrant application failed to establish probable cause. We reverse and remand for trial.

The affidavit, which we reproduce below in relevant part,[1] referred initially to hearsay information provided by a confi-

1. The affiant is a police officer, employed by the City of St. Paul for the past five years, and is currently assigned to the narcotics unit. Affiant has, in the course of his assigned duties, had occasion to investigate narcotic and drug offenses.

Lee James Kochendorfer first came to the attention of the St. Paul police narcotics unit in July of 1980 when Sgt. Jung, acting in an undercover capacity was investigating William Hayes. Hayes, while attempting to obtain some hashish, directed Sgt. Jung to the area of Sherburne Av. and Victoria Av. Hayes thought he observed some surveillance and decided not to buy hashish on that date. William Francis Hayes was later arrested and charged with a narcotics violation. Hayes pled guilty to a narcotics violation on 9/22/80.

After Hayes was in police custody he told Sgt. Jung and the affiant that the person from whom he intended to purchase hashish was Lee and from a description of the house we were able to establish the location as 847 Sherburne. The owner of the house at 847 Sherburne is Lee James Kochendorfer.

Since that time Kochendorfer has been under investigation by the Narcotics unit of the St. Paul Police Department.

The affiant, as part of the ongoing investigation of Lee Kochendorfer and 847 Sherburne Av., had occasion to meet with a confidential informant (CI). The CI was searched, supplied with a quantity of money, and watched as he/she went to 847 Sherburne to purchase controlled substance. When the CI left the premise at 847 Sherburne he/she was followed to a prearranged meeting place and the CI then turned over to the affiant a quantity of controlled substance which was, in fact, proven to be such by the Crime Lab of this department. On a second occasion the CI again made such a controlled buy, with identical procedure being followed. The second buy was made within the last 96 hours. It is requested that the name of the CI remain confidential because the affiant believes that if the name of the confidential informant were made known the CI would be in danger of great bodily harm.

The affiant being guarded by his experience in police work, and in executing search warrants, has found, on most all occasions, persons in the possession of controlled substance that were not specifically mentioned in the affidavit. It is therefore requested that this warrant be extended to cover all persons on the premise at 847 Sherburne Av. Affiant has, on almost all occasions while executing narcotic search warrants, found various types of drugs not specifically mentioned in the affidavit as requested items. It is also requested that this warrant be extended to cover all drugs in the controlled substance Law.

The affiant has, on many occasions while executing search warrants, found various types of weapons and guns in possession of persons arrested that are used by these persons in connection with drug trafficking. Therefore, the affiant requests that this warrant also cover weapons and guns found during the execution of the search warrant.

The affidavit also requested authorization for a night-time search because a "Search can be more safely and easily executed under the cover of darkness, and surveillance has indicated that many sales are taking place after dark at this location," and authorization for an unannounced entry because "From the affiants' experience in dealing with drug offenders in the past, it is known that attempts are made to destroy evidence when the presence of the police is known."

dential police informant. However, there is no need to determine whether the informant's tip was reliable or whether it was sufficient to establish probable cause by itself because the affidavit revealed that the police had sufficient information obtained by independent police observation of controlled buys, one within the previous 4 days, to establish probable .cause to believe that the residence in question was being used in the continuing business of selling marijuana. Under the circumstances, the affidavit sufficiently established that there was probable cause to believe that marijuana would be found in a search of the house. *State v. Yaritz,* 287 N.W.2d 13 (Minn.1979), and *State v. Hawkins,* 278 N.W.2d 750 (Minn.1979).

Defendant's contention that the affidavit failed to establish probable cause to search others on the premises is an issue which need not be decided because the warrant did not authorize searches of others and there is nothing to indicate anyone else was searched. Further, defendant would not have standing to complain that someone else's rights were violated.

■ As for the authorization to search for guns and other drugs, it is arguable that technically the affidavit did not establish probable cause to believe specifically that guns or other kinds of drugs would be present. But as a general practical matter, searching for these items probably does not require any greater intrusion than is already necessitated by the search for the described substances for which specific probable cause has been established. In any event, it is clear that even without authority to search for such items, the police are justified in seizing them when they come upon them in a lawful warranted search for drugs. 2 W. LaFave, *Search and Seizure* § 4.11 (1978); *State v. Streitz,* 258 N.W.2d 768 (Minn.1977); *State v. Michaelson,* 298 Minn. 524, 214 N.W.2d 356 (1973). Other drugs are seizable as contraband, and guns are seizable as evidence that the occupant is a drug seller. *State v. Love,* 301 Minn. 484, 221 N.W.2d 131 (1974).

We need not decide whether the magistrate improperly authorized an unannounced entry because the police did not make an unannounced entry. For a detailed discussion of the law of unannounced entry, see *State v. Lien,* 265 N.W.2d 833 (Minn.1978).

Defendant's contention that the execution of the warrant at 8:30 p. m.—*i. e.,* in the night time—requires suppression of the evidence seized is answered by our decision in *State v. Lien.*

Reversed and remanded for trial. Defendant is awarded $400 in attorneys fees pursuant to Minn.R.Crim.P. 29.03, subd. 2(8).

TODD, J., took no part in the consideration or decision of this case.